**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamien Rae Jensen, et al., | No. CV-15-08019-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| EXC, Inc., et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Summary Judgment (Docs. 116, 117,[1] 122[2]), Defendants' EXC, Inc., Russell Conlon, Conlon Garage Inc., Go Ahead Vacations, Inc. (the "Defendants") Response (Docs. 119, 120[3]), and Plaintiffs' Reply (Doc. 121). For the reasons stated below, Plaintiffs' motion is denied.[4]

**I.    Background[5]**

The events in this case took place on the morning of September 21, 2004 in Kayenta, Arizona. (Doc. 117 ¶¶ 7, 8.) Defendant Conlon was driving a tour bus, holding 39 passengers, when he departed a Hampton Inn. (Doc. 117 ¶¶ 6, 8, 10.) Prior to pulling out of the hotel driveway and onto westbound Highway 160, Defendant Conlon looked to his

---

[1]    Plaintiffs' Statement of Undisputed Facts.
[2]    Plaintiffs' Notice of Errata Re Statement of Undisputed Facts.
[3]    Defendants' Statement of Facts.
[4]    Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).
[5]    The facts that follow are undisputed.

left. (Doc. 117 ¶¶ 9-11.) Defendant Conlon saw a red SUV, driven by Bert Wisner (a nonparty), pull out of a Burger King about 300-400 feet away and turn westbound (or right) onto Highway 160. (Doc. 117 ¶¶ 11, 13.) The red SUV turned into the farthest westbound travel lane. (Doc. 117 ¶¶ 16, 17.) Defendant Conlon also turned westbound (or right) onto Highway 160 but before Mr. Wisner's car passed the Hampton Inn driveway. (Doc. 117 ¶ 18.)

In another car, a white sedan, Plaintiff Jensen, her husband (the decedent), and their minor son, also a plaintiff, were driving eastbound on Highway 160. (Doc. 1 ¶ 50.) The tour bus and Plaintiffs' car ultimately collided, and the decedent was killed upon impact. (Doc. 116 at 2; Doc. 117 ¶ 1.) Plaintiffs Jensen and her minor son sustained injuries. (Doc. 116 at 3.)

On February 16, 2015, Plaintiffs filed a complaint in this Court. (Doc. 1.) On May 11, 2018, Plaintiffs filed a motion for summary judgment. (Doc. 116.) On June 11, 2018, Defendants filed their response. (Doc. 119.) On June 26, 2018, Plaintiffs filed their reply. (Doc. 121.)

## II. Standard of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do so, the burden then shifts to the non-movant who "must do more than simply show that there is some metaphysical doubt as to

the material facts," and, instead, must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotations omitted).

**III. Discussion**

Plaintiffs moved for summary judgment on the issue of liability. (Doc. 116 at 1.) Plaintiffs' claim for negligence per se is dependent on their allegation that Defendant Conlon violated three statutes enacted for public safety: "Yielding the Right-of-Way," A.R.S. Section 28-774, "Driving on Wrong Side of Roadway," A.R.S. Section 28-721, and "Driving Within Lane," A.R.S. Section 28-729. Plaintiffs argue that, had Defendant Conlon adhered to the traffic laws, the tour bus would not have been in a position to have collided with Plaintiffs' car. (Doc. 121 at 2-3.) They argue that the undisputed facts establish that Defendant Conlon was also negligent by veering out of his lane of traffic, thus causing the collision with Plaintiffs' vehicle. (Doc. 116 at 6-7.) Defendants argue that the decedent was outside of his own lane of traffic at the time of impact, which, at a minimum, establishes that there is a question of fact as to which party was at fault and to what degree. (Doc. 119 at 3.) Further, Defendants argue that, because Arizona is a pure comparative fault jurisdiction, even if Defendant Conlon were to be found negligent, the trier of fact would still need to establish what percentage of fault to attribute to him and decedent. (Doc. 119 at 4.)

**IV. Analysis**

    **A.**    **Objections**

As an initial matter, Plaintiffs spend a great deal of time in their reply arguing that Defendants only offer boilerplate, non-specific objections in their statement of facts and, in any event, do not proffer any contravening evidence to dispute Plaintiffs' evidence. (Doc. 121.) The Court agrees that Defendants' objections, as listed in their statement of facts, generally lack specificity and are not, by themselves, overly helpful to the Court. However, even a cursory reading of the evidence provided by Plaintiffs reveals that, in many instances, Plaintiffs have not shown the lack of a genuine, triable issue of material

fact, which is their initial burden as the moving party under Federal Rule of Civil Procedure 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, the Court does not agree that Defendants failed to sufficiently argue, *at all*, why they believe Plaintiffs' recitation of the facts and conclusions are generally misstated, do not support their own conclusions, etc. Nor have Defendants failed to provide *any* evidence or failed to sufficiently point to issues in Plaintiffs' evidence that show a genuine, triable issue of material fact (at least as to some issues). The Court need not, and has not, considered Defendants' exhibits in determining this motion for summary judgment. Therefore, the Court will not rule on the admissibility of Defendants' exhibits at this time.

**B. Legal Standard**

To establish negligence under Arizona law, a plaintiff must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (citing *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983)). "The first element, whether a duty exists, is a matter of law for the court to decide." *Id.* (citing *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985)). "The other elements, including breach and causation, are factual issues usually decided by the jury." *Id.*

"Duty is defined as an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 150 P.3d at 230. The standard of care is defined as "what the defendant must do, or must not do ... to satisfy the duty." *Id.* (quoting *Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984)) (internal quotations omitted). Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained. *Id.* (citing *Markowitz,* 146 Ariz. at 354). "In general, every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." *Ontiveros v. Borak*, 136 Ariz. 500, 509 (1983) (citing *Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981)).

Public policy, as evidenced by a state's statutes, may also support the recognition of a duty of care. *Id.* at 232. In Arizona, "[a] person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." *Good v. City of Glendale*, 722 P.2d 386, 389 (Ariz. Ct. App. 1986). Arizona's traffic code is a safety regulation that can be the basis for negligence per se. *City of Phx. v. Mullen*, 65 Ariz. 83, 86 (1946). However, a finding of negligence per se does not relieve the plaintiff from its burden of proving causation and damages. *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 640 (1994); *see Mullen*, 65 Ariz. at 86 (stating that "[w]here the driver fails to comply with the positive directions of the statute, the question of whether such statutory negligence in any way contributed to the accident and injury of the plaintiff was one for the jury.") (internal quotations omitted). Arizona is a comparative negligence state in which the relative degrees of fault of the claimant, all defendants, and nonparties are to be determined and apportioned by the finder of fact. A.R.S. §§ 12-2505, 12-2506.

**C. Discussion**

**1. Negligence per se under A.R.S. § 28-774**

A.R.S. Section 28-774 states that "[t]he driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all closely approaching vehicles on the highway." Thus, Defendant Conlon was under a duty to yield the right-of-way to all closely approaching vehicles. Defendants do not argue to the contrary. However, as explained below, the issue of whether Defendant breached that duty and whether such violation contributed as a proximate cause to Plaintiffs' injuries are questions for the jury. *See Mullen*, 65 Ariz. at 86; A.R.S. §§ 12-2505, 12-2506.

It is true that Defendants concede Defendant Conlon pulled onto Highway 160 before Mr. Wisner's SUV had passed the Hampton Inn driveway. (*See* Doc. 120 ¶ 13.) But that is not sufficient to trigger a statutory violation here. The trier of fact must find that Defendant Conlon did not yield to a "closely approaching vehicle." Though Plaintiffs argue that Defendant Conlon "admitted that Wisner was close, within 300 feet or less (SOF 13)," doc. 116 at 6, the evidence does not, as a matter of law, mandate that finding. Rather,

Defendant Conlon testified that he "looked both ways before [entering] the highway," and, to his left, "saw a red SUV that was slowly coming out of Burger King[,] and at that point, [he] saw that it was clear, because Burger King's about a hundred yards away." (Doc. 117, Ex. 1 at 12.) Further, Plaintiffs' own expert, Mr. Turner, was asked, if "[Mr. Wisner's car] was within 400 feet of the Hampton Inn, do you believe that was adequate time and distance to allow the bus to safely enter in front of the Tahoe?" (Doc. 117, Ex. 6 at 11.) Mr. Turner answered, "[w]ell, safely is hard to call, but it wouldn't be – I wouldn't do it as a bus driver. It's putting yourself in a predicament which might cause an issue, and it's just not courteous." (Doc. 117, Ex. 6 at 11.)

Further, even assuming the trier of fact did find that Defendant Conlon breached his duty under this statute, the trier of fact must also find that such a statutory violation contributed to this accident.[6] It is undisputed that the accident in this case happened after Defendant Conlon pulled out onto the highway. In fact, Defendant Conlon was able to pull out onto the highway, into the right lane, then move to the left lane, and proceed in the left lane, alongside Mr. Wisner's vehicle, before the accident occurred.

Based on this evidence, a reasonable juror could conclude that Mr. Wisner's vehicle was not a "closely approaching vehicle" and that Defendant Conlon acted reasonably in pulling onto the highway, despite Mr. Wisner's vehicle already being on the highway. A jury could also find that, even if Defendant Conlon did violate this statute, that his pulling onto the highway before Mr. Wisner's car passed the Hampton Inn driveway did not contribute as a proximate cause to this accident. Accordingly, the Court denies summary judgment as to liability pursuant to A.R.S. Section 28-774.

---

[6] The Court is unpersuaded by Plaintiffs' argument regarding liability in this case. Though it might be true that, had Defendant Conlon not violated any traffic statute, he could have been in a position to have avoided this accident. However, it does not follow that, because he allegedly did violate various traffic statutes, he is necessarily the cause of this accident. Such logic is inapposite and disregards Arizona's negligence laws.

## 2. Negligence per se under A.R.S. § 28-721

A.R.S. Section 28-721 states that:

> "[o]n all roadways of sufficient width, a person shall drive a vehicle on the right half of the roadway except as follows: 1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing the movement. 2. When the right half of a roadway is closed to traffic while under construction or repair. 3. On a roadway divided into three marked lanes for traffic under the rules applicable on the roadway. 4. On a roadway designated and signposted for one-way traffic.
>
> On all roadways, a person driving a vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall drive the vehicle in the right-hand lane then available for traffic or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway."

A.R.S. §§ 28-721(A), (B).

This statute affirmatively required Defendant Conlon to control the tour bus so as to keep it within the lane on the right side of the highway. It is not genuinely disputed that Defendant Conlon moved from the right lane to the left lane on Highway 160. Defendants do not argue that any exception under the statute applies, that any legally recognized excuse applies, or that any other regulation negates this duty under other circumstances. Therefore, as a matter of law, Defendant Conlon breached his duty to stay in the right lane and violated A.R.S. Section 28-721. However, as the Court will explain below, it is for the jury to determine whether this statutory violation "in any way contributed to the accident and injury of [Plaintiffs]." *Mullen*, 65 Ariz. at 86; *see* A.R.S. §§ 12-2505, 12-2506.

Plaintiffs argue that the proximate cause of Plaintiffs' injuries was Defendant Conlon's decision to move into the left lane from the right lane *and*, necessarily, to then cross over the universal, center lane, which caused a head on collision with Plaintiffs' vehicle. Defendants argue that the decedent was wholly to blame for this accident, but, at

a minimum, contributed to this accident, as Plaintiffs have admitted that the decedent left his lane of travel. (Doc. 119 at 2-3.) Here, a reasonable jury could determine that Defendant Conlon's decision to move into the left lane did not, by itself, proximately cause the accident. A reasonable jury could find that Defendant Conlon could have moved into the left lane and proceeded to stay in the left lane without causing an accident. (*See* Section 4 *infra*.) In other words, the jury could conclude that, unless the decedent moved into Defendant Conlon's traffic lane, the vehicles could have proceeded in their respective lanes, despite Defendant Conlon's statutory negligence.

This is supported by Defendant Conlon's testimony, in which he stated: (1) he was "looking straight ahead" at the time of the accident, (2) he was paying attention to Mr. Wisner's car, (3) he had been in the left lane for about 45 to 50 seconds prior to the accident,[7] and (4) "actually slowed down" when he realized Mr. Wisner was apparently trying to pass him. (*See* Doc. 117, Ex. 1 at 17-19.) Further, a reasonable jury could find that Defendant Conlon's attentiveness to Mr. Wisner's vehicle was reasonable conduct under the circumstances. The jury could also find that Mr. Wisner's decision to pull into the right lane to pass the bus was unreasonable conduct under the circumstances, despite Defendant Conlon's negligence of entering the left lane.[8] This is corroborated by Defendants' expert, Mr. Grimes, who testified that "there is no way [the bus] was going

---

[7] Defendant Conlon testified that (1) he was in the left lane for about five to six seconds before he noticed Mr. Wisner's vehicle pull into the right lane; (2) that thirty seconds passed from when Mr. Wisner entered the right lane and Defendant Conlon noticed him by the tour bus's rear tires; and (3) that ten to fifteen seconds passed from when Defendant Conlon deaccelerated and the impact occurred. (Doc. 117, Ex. 1 at 17-19.)

[8] Defendant Conlon testified that he had his signal on for five to six seconds before he moved into the left lane, that Mr. Wisner was "at least a bus length away, if not more," which he estimated to be 50 feet, and that Mr. Wisner appeared to be speeding and "aggressively trying to pass [him] up." (Doc. 117, Ex. 1 at 15, 17-18.) Mr. Wisner testified that he knew the highway narrowed and that he was attempting to pass the tour bus before the merger. (Doc. 117, Ex. 2 at 4.) He testified that he did not want to be behind the tour bus because "it's a hilly area, with twists in the road, and it's just not fun getting behind a big bus." (Doc. 117, Ex. 2 at 4.)

near[ly] as fast as Mr. Alexander determine[d]. It's not physically possible for it to have been going that fast." (Doc. 117, Ex. 5 at 18.) Thus, the facts here preclude an entry of summary judgment as to the issue of causation. Accordingly, the Court finds that Defendant Conlon's statutory violation of A.R.S. Section 28-721 was negligence per se but denies summary judgment as to liability pursuant to A.R.S. Section 28-721.

### 3. Negligence per se under A.R.S. § 28-729

A.R.S. Section 28-729 states that:

> "[i]f a roadway is divided into two or more clearly marked lanes for traffic, … [a] person shall drive a vehicle as nearly as practicable entirely within a single lane and shall not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety."

A.R.S. § 28-729(1).

This statute affirmatively required Defendant Conlon to prevent the tour bus from moving out of its lane until the movement could be made safely. As discussed *infra* in Section 4, there is a genuine issue of material fact as to whether Defendant Conlon drove his vehicle "nearly as practicable entirely within a single lane." The evidence could support many conclusions about what conduct would have been reasonable under the circumstances, and the Court does not believe any of those conclusions apply as a matter of law. As such, the Court cannot find, as a matter of law, that Defendant Conlon violated A.R.S. Section 28-729 by failing to prevent the bus from exiting the westbound lane he was traveling in and crossing over the universal, center turn lane. Accordingly, the issue is one for the jury, and the Court denies summary judgment as to liability pursuant to A.R.S. Section 28-729.

### 4. Negligence of crossing over the line

Defendant Conlon, as a matter of law, was under a duty to avoid creating situations which pose an unreasonable risk of harm to others. As to whether he breached that duty, the issue is for the jury. A.R.S. §§ 12-2505; 12-2506. The evidence provided by Plaintiffs

precludes the entry of summary judgment because a reasonable jury could determine that Defendant Conlon did not leave his lane of traffic and responded reasonably under the circumstances. For example, per the Arizona Traffic Accident Report, a passenger on the tour bus stated, "she was seated behind the driver [of the bus] and saw the [sedan] head straight for them and hit them." (Doc. 117, Ex. 4 at 4.) The passenger stated that the sedan "did not try to turn or anything." (Doc. 117, Ex. 4 at 4.) The accident report also indicated that the "collision occurred in the west bound lane near center line." (Doc. 117, Ex. 4 at 4.) In addition, Defendant Conlon testified that he saw Plaintiffs' car, in its lane, coming towards the tour bus. (Doc. 117, Ex. 4 at 6.) Defendant Conlon testified that the sedan "veered right into [the bus and] hit the front end of the bus." (Doc. 117, Ex. 4 at 6; Doc. 117, Ex. 1 at 21.) This is corroborated by at least some witnesses. (Doc. 117, Ex. 3 at 12.)

Moreover, Plaintiffs' expert, Mr. Alexander, was asked whether the collision "could have been in the westbound lane," and answered, "it's possible that [decedent] was in the left-bound – part of his vehicle was in the left-bound lane when the accident occurred." (Doc. 117, Ex. 3 at 7.) Mr. Alexander also testified that the decedent could have "swerved to his left just prior to impact in an effort to avoid Conlon who would have appeared to be out of control to any oncoming traffic." (Doc. 117, Ex. 3 at 15.) However, Mr. Alexander testified that he did not know why the decedent would have done so because a left turn would have caused him to run right into the bus instead of away from the bus. (Doc. 117, Ex. 3 at 15.) Thus, a reasonable jury could find that the decedent could have anticipated that Defendant Conlon would move within his westbound traveling lanes, *i.e.*, from the right lane to the left lane, but that it was unreasonable for the decedent to veer into oncoming traffic when it sees an approaching bus appearing to be "out of control."

Ultimately, the whole, lengthy discussion in Mr. Alexander's deposition regarding the "crossing the line" issue shows precisely that there is an issue as to where exactly the collision occurred, where the decedent and Defendant Conlon were driving directly before the accident, and why. (Doc. 117, Ex. 3 at 5-15.) Moreover, Defendants' expert, Mr. Grimes, also testified that the issue of the impact's location and where the vehicles were

before that impact is difficult to judge. (*See* Doc. 117, Ex. 5.) However, he testified that there is no evidence to support a conclusion that the tour bus was in the universal, center turn lane prior to impact and that, if one did come to that conclusion, it would require much speculation. (Doc. 117, Ex. 5 at 10-13.) Further, Plaintiffs concede that the impact, "[a]t its farthest point north, [could] be just inside the left edge of the left westbound travel lane." (Doc. 117 ¶ 25; Doc. 121 at 8.) Therefore, viewing the evidence in the light most favorable to Defendants, a reasonable jury could conclude that Defendant Conlon's evasive maneuver to turn right at the last minute in an effort to avoid the collision was both a reasonable response and not indicative of the tour bus being over the universal, center turn lane.

Thus, despite Plaintiffs' claims that this issue appears settled, *see* doc. 117 ¶¶ 29-34; doc. 121, its own evidence does not require that conclusion. Instead, a reasonable person could determine that the decedent was in the westbound lane at the time of impact and that he might have ended up there for numerous reasons, *i.e.*, Defendant Conlon's driving looked "out of control," and the decedent made a split-second decision to veer left instead of right. A reasonable person could also conclude that the decedent had been traveling, at least at some point before the accident, in the westbound travel lane and that Defendant Conlon never entered the universal, center turn lane. To what extent the jurors will give more weight to Defendant Conlon's testimony, the parties' experts' analyses, or the witnesses' recollections is for them to decide at trial.

### V. Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment on liability is denied. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 116) is **denied.**

Dated this 13th day of February, 2019.

Honorable Steven P. Logan
United States District Judge